UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| TIMOTHY MIMS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 5:19-cv-2045-RDP-GMB |
| CORDARO MELTON, *et al.*, | ) |
| Defendants. | ) |

# **REPORT AND RECOMMENDATION**

Before the court is Plaintiff Timothy Mims' *pro se* amended complaint alleging violations of his rights under the Constitution or laws of the United States pursuant to 42 U.S.C. § 1983. Doc. 29. Mims names Sergeant Cordaro Melton[1] and Captain John Hutton as defendants and sues them in their individual capacities. Doc. 29 at 1. Mims alleges that Melton used excessive force against him on May 15, 2017 causing serious injuries, including two broken arms. Doc. 29 at 2–3. Additionally, Mims contends that Melton and Hutton were deliberately indifferent to his safety by failing to protect him from inmate assaults in the "hotbed" area of Bibb Correctional Facility. Doc. 29 at 2–4. Although he does not identify the specific relief he is seeking, Mims requests a jury trial. Doc. 29 at 5.

In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1),

---

[1] Melton was a Correctional Officer, not a Sergeant, when the facts alleged in the amended complaint occurred. Doc. 48-2 at 1.

the court referred the complaint to a Magistrate Judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).  For the reasons to follow, the court recommends that the defendants' motion for summary judgment be granted in part and denied in part.

## I. PROCEDURAL HISTORY

On May 15, 2020, the court entered an Order for Special Report directing the defendants to file a Special Report addressing Mims' factual allegations. Doc. 45 at 3–4.  The court advised the defendants that the Special Report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it to be a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. Doc. 45 at 7.

On June 8, 2020, the defendants filed a Special Report, supplemented by affidavits and institutional documents. Doc. 48.  The court notified the parties that the court would construe the Special Report as a motion for summary judgment and notified Mims that he had 30 days to respond to the motion for summary judgment by filing affidavits or other material. Doc. 51.  The court also advised Mims of the consequences of any default or failure to comply with Federal Rule of Civil Procedure 56. Doc. 51 (citing *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985)).  Mims did not file a response and the motion for summary judgment is under submission and ripe for review.

## II. STANDARD OF REVIEW

Because the court has construed the defendants' Special Report as a motion for summary judgment, Federal Rule of Civil Procedure 56 governs the resolution of the motion.  Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532–33 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  Thus, under such circumstances, the public official is entitled to judgment as a matter of

3

law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citations omitted).

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney." *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

### III. SUMMARY JUDGMENT FACTS[2]

On May 15, 2017, Mims was incarcerated with the Alabama Department of Corrections ("ADOC") at Bibb Correctional Facility and assigned to the "hotbed," an overcrowded housing area. Doc. 29 at 2. In the hotbed, Mims was "forced to defend himself from other inmates" and suffered unspecified injuries as a result. Doc. 29 at 2. After the altercations, Mims asked Hutton if he could be moved from

---

[2] Consistent with the summary judgment standard, the following facts are undisputed or, if disputed, taken in a light most favorable to the plaintiff. The court addresses any factual disputes in the footnotes.

4

the hotbed and threatened to cut himself. Doc. 29 at 2. Hutton refused to move Mims and instead sent him back to his assigned area. Doc. 29 at 2.

Soon after, Mims cut himself. Doc. 29 at 2. Mims ran toward the infirmary to get treatment for his injuries.[3] Doc. 29 at 2. Melton saw Mims running with a razor blade and gave him several direct orders to release it. Doc. 48-2 at 1; Doc. 48-9 at 1. When Mims refused to drop the razor, Melton hit him on the back of his head with a baton. Doc. 29 at 2. Mims fell backwards and covered his face and body with his arms. Doc. 29 at 2. Melton continued hitting Mims with the baton.[4] Doc. 29 at 2. At some point, Mims discontinued using force. Doc. 48-9 at 1. Correctional Officer Marcus Bryant escorted Mims to the Health Care Unit for treatment. Doc. 48-9 at 1.

In the Health Care Unit, the medical staff noted superficial self-inflicted cuts to Mims' right and left forearms. Doc. 48-8 at 1. The medical staff also noted a one-inch laceration/hematoma on the side of his head and a half-inch cut on the back of his left forearm. Doc. 48-8 at 1. Mims had multiple knots on both forearms, two missing teeth, one loose tooth, and a scratch approximately 10 cm in length on his back. Doc. 48-8 at 1. X-rays taken on the day after the incident revealed ulna

---

[3] The Incident Report states that Melton was escorting Mims back to the dormitory B-Dorm when Mims pulled out a razor and attempted to cut himself. Doc. 48-9 at 1.

[4] Melton states that he used a "minimum amount of force" on Mims by striking him on the forearms, but then Mims then fell backwards striking the back of his head on the ground. Doc. 48-2 at 1. Melton denies that he hit Mims on the back of his head with the baton. Doc. 48-2 at 1.

fractures to both arms (Doc. 48-4 at 8) and a fracture at the base of the fifth metacarpal (Doc. 48-4 at 3).[5] Mims remained in the Health Care Unit for five months while he recovered from his injuries. Doc. 29 at 3.

Prison officials charged Mims with violating Rule 925 for his failure to obey a direct order of an ADOC employee. Doc. 48-7 at 1. In Mims' disciplinary report, Melton stated that he saw Mims pull out a razor blade and attempt to cut himself. Doc. 48-7 at 1. Melton also stated that he gave Mims several orders to drop the razor, but Mims refused to comply. Doc. 48-7 at 1. Mims pled guilty to the charge after a hearing. Doc. 48-7 at 2.

On November 8, 2017, Mims underwent surgery for his bilateral ulnar fractures. Doc. 29 at 3; Doc. 48-4 at 25. Thereafter, he was provided with removable forearm splints. Doc. 29 at 3. Even though his broken bones had not healed, prison medical staff discharged Mims from the infirmary to general population on December 12, 2017. Doc. 29 at 3.

After his release to the general population, Mims was "again required to defend himself" after other inmates harassed him. Doc. 29 at 3. Mims reported the incidents to Hutton, Melton, and other officers and asked to be moved, but they did

---

[5] Mims claims that he was not taken to the Health Care Unit until May 25, 2017—ten days after his injuries. Doc. 29 at 3. The medical records directly contradict this allegation and show that prison medical staff examined him on May 15, 2017 (Doc. 48-8 at 1) and he underwent x-rays the following day (Doc. 48-4 at 3 & 6–8).

not grant his request. Doc. 29 at 3–4.  Mims was forced to cut off his casts to defend himself against these inmates. Doc. 29 at 4.  As a result, Mims' arms did not heal properly and he has suffered permanent damage to his arms. Doc. 29 at 4.

On February 13, 2018, Dr. Thomas Powell, an orthopedic surgeon, examined Mims as a follow up from his surgery. Doc. 48-4 at 25.  Mims complained of consistent pain in his arms with more pain in his left arm than his right. Doc. 48-4 at 25.  Dr. Powell noted that Mims' "nicotine abuse disorder" was causing a "delayed union" of the fracture. Doc. 48-4 at 25.  Dr. Powell preferred to wait another six or eight weeks for the fracture to heal before he would consider "redoing the nonunion site." Doc. 48-4 at 25; Doc. 48-5 at 1.

On April 24, 2018, Dr. Powell saw Mims again for a follow-up examination. Doc. 48-5 at 24.  According to Dr. Powell's progress notes, Mims reported that he had stopped smoking and hoped it would help with the healing process. Doc. 48-5 at 24.  Dr. Powell noted some mild deformities in both arms near the fractures. Doc. 48-5 at 24.  Dr. Powell recommended additional healing time and monitoring for any furture problems, but otherwise did not find further treatment to be necessary. Doc. 48-5 at 24–25.

## IV. ANALYSIS

The amended complaint alleges two causes of action: (1) excessive force against Melton in violation of the Eighth Amendment, and (2) failure to intervene in

the inmate assaults against Melton and Hutton.[6]  Doc. 29 at 4–5.  The court addresses each claim below.

## A.   Excessive Force

The court examines Mims' excessive force allegations under the standards set by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986). *See Campbell v. Sikes*, 169 F.3d 1353, 1374–75 (11th Cir. 1999).  In *Hudson*, 503 U.S. at 6–7, the Supreme Court held that when assessing an inmate's excessive force claim "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned that

> [m]any of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates.  Both situations may require prison officials to act quickly and decisively.  Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 6 (citations omitted).

---

[6] Although the amended complaint labels the second count as "deliberate indifference," it does not state a claim for deliberate indifference. Doc. 29 at 4–5.

With these concerns in mind, the Supreme Court set out certain factors for the court to consider when evaluating the use of force in a correctional setting. These factors include: (1) the need for the application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible official, (4) any efforts to temper the severity of a forceful response, and (5) the extent of the injury suffered by the inmate. *Whitley*, 475 U.S. at 321. In applying these factors to the facts of a particular case, the Supreme Court has observed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9–10 (citations omitted). To create a genuine issue of material fact, a plaintiff must come forward with evidence from which a reasonable inference can be drawn that the defendant acted maliciously and sadistically. Generally, courts "do not second-guess prison officials on matters that they are better equipped to handle under the exigencies of an internal disturbance." *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir. 1998).

Applying these principles to the facts here, the court concludes that Mims has created a genuine dispute of material fact on the question of whether Melton used excessive force. Taking the facts in the light most favorable to Mims, he cut himself

9

and then ran toward the infirmary after Hutton refused to move him out of the hotbed. Doc. 29 at 2. Melton saw Mims holding the razor blade as he ran and gave him several direct orders to drop the razor. Doc. 29 at 2; Doc. 48-2 at 1. Mims' refusal to obey Melton's orders justified some application of force to prevent Mims from injuring himself, other inmates, or correctional officers.

Melton did respond with force. According to Mims, Melton caught up with him as he ran and hit him on the back of his head with a baton. Doc. 29 at 1. Mims fell backwards onto the ground and covered his face and body with his arms while Melton continued striking his forearms with the baton. Doc. 29 at 1; Doc. 48-2 at 1. The record does not reflect how many times Melton struck Mims while he was on the ground, but Melton broke both of his arms and a bone in his wrist, and he used enough force to knock out two teeth and loosen another. Doc. 48-8 at 1; Doc. 48-4 at 3 & 8. Despite the tense situation and the risks associated with an unsecured inmate wielding a razor blade, the facts before the court create a jury question as to whether Mims used more force than necessary to gain control of the situation and restore order in the jail.

The court is mindful of the Supreme Court's instruction that "the 'core judicial inquiry'" should be "whether [the force] was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (quoting *Hudson*, 503 U.S. at 7). If Mims can prove his allegations at trial,

a reasonable juror could conclude that Melton's use of force was malicious and sadistic. While there was a need for the application of some force, Melton continued to strike Mims after he was on the ground with his arms covering his head. And he did so with such force that Mims broke both arms and lost two teeth. The record does not reflect when Mims dropped the razor or whether there was any reason to believe that Mims continued to pose a threat after he fell to the ground and covered his head. If Melton continued to strike Mims after the threat had passed, a reasonable jury could find this use of force to be excessive. For this reason, the court concludes that the summary judgment record does not provide sufficient detail about the incident for a finding as a matter of law that Melton used only the amount of force necessary to secure Mims and to prevent him from harming himself or others. Melton had the opportunity in his affidavit to cure this deficiency, but he chose instead to be vague and conclusory. *See* Doc. 48-2 at 1 (maintaining that he "used the minimum amount of force necessary"). Without more detail, the court cannot find as a matter of law that Melton used only a constitutionally permissible amount of force, and therefore Mims should have an opportunity to argue his case to a jury.

Based on the foregoing, the court will recommend the denial of Melton's motion for summary judgment on Mims' Eighth Amendment excessive force claim.

**B.      Failure to Protect or Intervene**

Mims alleges that he warned Hutton and Melton that other inmates were

physically harassing him, and he therefore contends that Melton and Hutton are liable for failing to intervene in later inmate assaults. Doc. 29 at 5.

The Eighth Amendment imposes upon institutional officers the duty to "take reasonable measures to guarantee the safety of the inmates" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citation omitted). "'In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature.'" *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso City Jail*, 642 F.2d 134, 136 (5th Cir. 1981)).[7] When institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively, "sufficiently serious" harm, a constitutional violation occurs. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

12

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] th[at] inference." *Farmer*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not," cannot establish liability on the part of the official. *Id*. at 838. The known risk of injury must be a "'strong likelihood, rather than a mere possibility.'" *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989).

If a plaintiff establishes that an institutional official knew of a substantial danger or risk to an inmate, he must also show that the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Deliberate indifference requires "a state of mind more blameworthy than negligence." *Id*. at 835. Finally, the plaintiff must produce sufficient evidence that the defendant's deliberate indifference to a known danger or risk caused the plaintiff's constitutional injury. *See Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

Additionally, "[p]rison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. However, in order for liability to attach, the officers must have been in a position to intervene." *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010)

13

(citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)). The plaintiff has the burden of demonstrating that the defendant was in a position to intervene but failed to do so. *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008)).

Viewing the facts in a light most favorable to Mims, there is no evidence that Hutton and Melton were subjectively aware that inmates posed a substantial risk of serious harm to Mims before the inmate assaults in or around May and December 2017. Mims does not allege that he complained to the defendants—or any prison official for that matter—that he was in danger of being assaulted by an inmate before the assault occurred. Rather, Mims asserts in his complaint that he reported these incidents after they occurred. Doc. 29 at 2–3. And while Mims states that he told Hutton and Melton that he was being physically harassed by other inmates "before and after Officer Melton broke [his] arms" (Doc. 29 at 5), Mims does not allege when he informed Hutton and Melton of this harassment or the specific facts he reported before he was assaulted in December 2017.

In sum, Mims has not produced evidence that the defendants had knowledge of any impending risk of harm to him, much less knowledge of a substantial danger or risk, posed by any other inmate before the inmate assaults. Instead, all Mims has alleged is that Hutton and Melton had a generalized awareness of some sort of risk to Mims. These allegations do not satisfy the subjective awareness requirement and

are insufficient to state a failure to protect claim based on Hutton's or Melton's inaction. *Carter v. Galloway*, 352 F.3d 1346, 1349–50 (11th Cir. 2003).

Mims also alleges generally that Hutton and Melton failed to intervene in the inmate assaults. Doc. 29 at 5. However, noticeably absent are any allegations that Hutton or Melton were present during these assaults and in a position to intervene to protect him. *See Hadley*, 526 F.3d at 1331. Accordingly, Mims has not met his burden of showing that Hutton or Melton violated his constitutional rights by failing to intervene to protect him.

Based on the foregoing, Hutton and Melton are due summary judgment on Mims' failure to protect or intervene claims, which are due to be dismissed with prejudice.

## V. RECOMMENDATION

For these reasons, the Magistrate Judge RECOMMENDS that the motion for summary judgment be GRANTED IN PART and DENIED IN PART. The Magistrate Judge recommends that summary judgment be granted on Mims' claims for failure to protect and intervene against both defendants but denied on Mims' claim of excessive force against defendant Melton.

## VI. NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within

14 calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action

back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

DONE and ORDERED on August 9, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE